In police court, my name is Bruce Ferg, Assistant United States Attorney on behalf of the government. I would like to reserve at least two minutes, if I can, of my time. Basically this case is a government sentencing appeal where the district court granted a three-level downward departure based on what it called the totality of the circumstances. And really, although there are a number of kind of peripheral issues that have been debated in the briefs, if we look at exactly what the district court said, I think the case is rather simple, actually. The statement that I'm referring to is on pages 65 to 66 of the excerpt of record. And after hearing all of the discussion, the district court said this about why he was going to be sentencing Mr. Soxier, as he did, recognizing that each factor of those factors argued in departure standing alone, one of those factors would not make this case extraordinary or fall outside the heartland of cases. But under a totality of circumstances, all factors considered together, giving the weight as I do to the post-defense rehabilitation efforts for this gentleman, his conduct while incarcerated I find to be extraordinary and laudable. And if you put that factor, that weighted factor, together with the factors pertaining to his upbringing, his socioeconomic background, what happened in his childhood, et cetera, I think it's outside the heartland of the cases, and I'm going to depart based on the totality of those circumstances. Now, in that one long, rambling sentence, basically the district court said the only reason I'm going to depart is because of all of these factors put together. But the problem was that he expressly stated factors which are impermissible factors, including upbringing, socioeconomic background, and so forth. And so Kuhn tells us very clearly that if there is a departure which is based even in part on impermissible factors, that's the end of the story. It has to go back to the district court, sentence is vacated. You know, when I first read your brief, I thought, well, it tells me that we have de novo review. If we have de novo review, we don't care what the district court did. We can just look at the record and decide whether there should be a downward departure. But the PROTECT Act says de novo review, but then it takes three-quarters of it back, because it says that if we disagree with the way the district court handled it, we have to remand. Well, even if you had de novo review, and I believe you do under the PROTECT Act, you would be bound by the same ultimate legal requirement. Oh, sure. And I could look at it and I could say, you're here fighting to give this guy who wasn't getting paid a higher sentence than all of his co-defendants who were much more culpable. And I can just look at that fact and say that's enough to depart downward to a reasonable sentence, which is 10 months below what you're here fighting to give him. And it would be de novo, and that would be it. Well, it's still de novo of what was found below. I don't believe that you're allowed to simply venture forth and kind of sentence originally as a district court did. That's what de novo review means, but that's not what the PROTECT Act means. I agree with you there. So is the procedure in the government's view that on de novo review, we still have to on remand? Effectively, that's what the PROTECT Act itself states. There is a footnote that I included at the very end of the opening brief, which, excuse me, footnote 6 on page 26, which refers to section 401E of the act, which amends 18 U.S.C. 3742. And that is the procedural portion, if you will, of the remand legislation. And it says that on remand, and this is sub 2, the court shall not impose a sentence outside the applicable guideline range except upon a ground that was A, specifically and affirmatively included in the written statement of reasons required by 3553C, which, of course, is also a problem because we didn't have one of those here, and B, was held by the Court of Appeals in remanding to be a permissible ground of departure. So essentially, you set the parameters by saying these were or were not permissible grounds of departure. In a sense... But there's no such thing anymore as a resentencing on an open record? What if the district court on remand now wants to do what I think he was trying to do, which is to recognize the disparity between the sentences that the other defendants got and the one that this defendant got? Can he now on remand go back and say, oh, well, what I really meant to say was sentencing disparity, and that's the basis for my damage part? I would suggest not. And the reason I say that is because the Congress made it very clear that what the basis for the sentence, what the district court finds as the basis for the sentence is supposed to be announced orally and also to be included in this statement of reasons. And neither of those things were done with sentence disparity in this case. Well, he provided something in writing that does refer to the disparity. That was in a different statement of reasons, if you will. Before it was amended, 3553C indicated that there was a statement of reasons which was to be directed to the probation or correctional authorities and state the reasons for a particular sentence. And that is, in fact, what the defendant discovered and was submitted to this court under seal. However, that is not the additional statement of reasons which the PROTECT Act has inserted in the 3553C, which is So this is not part of what we used to call the judgment and commitment order? No, it's not. It prepared, you say, for probation? That's the language of the statute, yes, sir. Does it go to the Bureau of Prisons? And Bureau of Prisons, right. But I still don't understand, if it's in writing and if it articulates the reasons why the court sentenced the defendant, why can't we consider? Because, I would suggest to you, this falls under your very well-established doctrine that if there is some kind of discrepancy or ambiguity about what the sentence is, that it is what was orally pronounced at the Allen case. Oh, I see what you're saying. And since he didn't specifically say on the transcript, it's because of disparity of sentence. Exactly. He can't go back and add a new reason. Precisely. All right. So then, going back to my original question, assuming that we reverse and remand, as you argue, and tell the district court you can't do it on the impermissible grounds, there is no such thing as 3 times 0 is 1. Exactly. Why can't, given the fact that he had previously put it in the record, why can't he go back on remand and say, well, I'm going to give the departure because of the disparity? Well, it comes down to, again, essentially allowing the judge to add new grounds, which is specifically what the statement requirement that Congress put in the Protect Act is designed for. Well, he can't do it on the grounds that he orally articulated. So I guess, if your argument is correct, then he's the only thing he can do on remand is to sentence within the range that the probation officer originally computed. I believe that's essentially correct. Even if the district court thinks there's a disparity in the sentencing. Because he made it very clear. And how is that just? The grounds on which he stated, which the district court stated it was sentencing, did not include disparity. He discussed it, or it was argued to him, I should say, and he had some concerns about it. But when he orally pronounced the sentence, he did not rely on that. And as I say, that is essentially what he was indicating as the basis for his sentence. And so that's now gone. In essence, that first sentencing attempt is null and void. Because we've now vacated it and remanded it for resentencing. I still don't understand why it's unfair, in the government's view of the world, for the district court on resentencing to look at this man again and to consider the factors that he can properly consider, one of which is sentencing disparity, if he has to resentence the defendant anyway. Well, let's assume that he really did intend to have sentencing disparity as one of the factors. And it only came out in that later statement. The bottom line is that he still said, the only reason I am giving you this sentence is because of the totality of the factors, which included several, which were expressly prohibited by the guidelines. And so if he would only have sentenced on that basis, even assuming sentence disparity, because of the improper factors, then he's saying, without those improper factors, I would not have given you a departure. And therefore, he's already basically stated where he would come down. Well, I guess we can remand for further proceedings and see if he really meant it. I just think it's curious for the government to be arguing that this has to be remanded for resentencing, but not give the district court the right to fully resentence and consider all of the appropriate factors that the law says he may consider if he'd done it right the first time. And we're saying you didn't do it right the first time, now redo it. And you want to say, well, redo it with one hand tied behind your back. You can't give the defendant the benefit of an otherwise recognizable factor. That just seems unfair to me. Essentially what we're saying is that it's kind of like the law of the case. He has specifically said on the record, I will only give you this departure on the basis of the totality of the circumstances, including these impermissible factors, including your upbringing, socioeconomic status, and so forth. So if he would only have sentenced on the totality, including those impermissible factors, then if he removed those, then he has basically said, I would not have sentenced you or given you a departure based on the permissible factors. He's already said that, in effect. Okay. You've more than used your time. Thank you. Marcy Janes for the Federal Public Defender's Office of the District of Arizona on behalf of Juan Tsok-Cierra. How was it pronounced, Ms. Janes? Pardon me? Your client's name? Juan Tsok-Cierra. Tsok-Cierra. Tsok. Thank you. On behalf of Mr. Tsok. They pronounce it better in Tucson than they do in Texas. I can assure you, we don't pronounce it easily in Seattle. Oh, it's a K'iche name. It's a native name. The court should affirm this downward departure through their de novo review in the Post-Protect Act era. First, because it's based upon permissible factors, which are supported by the facts in the record. And in the alternative, the sentence should be affirmed in spite of impermissible factors because the record's clear that the district court meant to achieve the sentence it imposed, primarily to avoid unwarranted sentencing disparity. Why do you say that? That's the problem we have with the record. Well, I have some citations, Your Honor, from the record in which the court begins to indicate to the government that they're concerned about the disparity in sentencing. And at the record on page 49, the court begins stating, after the defenses explain that Mr. Valkava got 32 months, or excuse me, on 46, the judge states, I sentenced Mr. Valkava, Aguirre, Durazo, and now Tsok. And I do not want this defendant's sentence to be inappropriate compared to, and then he trails off. On page 49, he states, I'm getting to a range of 46 to 57 months compared to the sentences meted out to these other defendants. Then the judge expresses concern over unwarranted disparity and states, and, and but for Bustios' weapon, which brought a five-year statutory minimum, meaning he got, one could argue, 28 months for the drug charge. And then after the defendant's elocution, the court went on, on page 64, I'm going to do this with some semblance of integrity and so as not to violate the spirit of the sentencing guidelines, but I'm concerned in this case about the disparity in sentencing based on all of the circumstances that Mr. Tsok would receive a greater sentence than any participant other than Bustios who has the gun. And based upon those reasons, and he does indicate in his oral statement that he's considering the totality of the circumstances, circumstances which he had identified as including disparity in sentencing. What possibly happened at that sentencing hearing is that this particular district court judge may not have been aware that disparity alone in our circuit can stand as a ground for downward departure. And under the Caperna case, this, he is, he is. In the Caperna case, this court has articulated that where you have co-defendants that have the same charges, that they are eligible for a downward departure based on sentencing disparity. And were the judge to know that, it's quite possible that that alone would have motivated him to arrive at a 36-month sentence. So would the best result here then be for us to simply remand on an open record and let him, now that you are, are guided by the experience on this appeal, let him re-articulate that reason as the basis so that he can still do the right thing? If the court wishes to do that, that would be making a statement regarding what de novo review is and is not, I believe, in the post-protect era. I think, you know, if the court wants to take a more conservative view of what its role is post-protect act, that it's in a position to affirm the sentence because. What concerns me is that reading the passage that Mr. Berg cited, it does seem that when he finally got to the point where he was going to announce his downward departure, that he was specifically citing impermissible factors under the totality of the circumstances standard. Based on what you've just cited to me, it seems that he was certainly considering disparity. But I don't know how we as an appellate judge can get into the sentencing judge's mind and say, well, if he now understood that he couldn't do it on those impermissible factors, would he still have departed as far as he did? I think the record is pretty clear upon what basis he was wishing to depart. And the court has recently decided in the Rivas case how to proceed. But he identified totality, saying not, you know, no individual factor standing alone is sufficient to get there. And now we're sending this back saying we're taking away three of the four factors. So now where do you stand with regard? You see what I'm saying? I understand. And if, in fact, what happened was a district court judge made a mistake of understanding of the law and his ability to depart based on the one factor, then perhaps the proper result in this case is a remand. However, I think that the court can look at the record and see that this was the intent of this particular district court judge to arrive at a sentence to be on imparity and that this is the proper ground under the sentencing statute under 18 U.S.C. 3553, that just as well as avoiding unwarranted sentencing disparity. And I think his discussion of Bustillos, the person who was in possession of the firearm, was his example of what warranted disparity is. And in this case, there's no reason that Mr. Tzolk would be given a higher sentence than other people. He was in criminal history category one. He had no priors. As the record indicates, there were reasons why he was involved in this particular offense that made his commission of the offense unusual and worth examining. Although he wasn't getting paid, he wanted some cocaine because of his addiction. I don't believe the government ever articulated what Mr. Tzolk's motivation might have been to be involved. I did want to bring up the issue of Kuhn, that the Supreme Court, while the government is correct in indicating that Kuhn does state that a remand is required where departure is based on both valid and invalid factors, it goes on and says, unless it determines the district court would have imposed the same sentence absent reliance on impermissible factors. And I think that because of the extensive record on the issue of disparity that this Court can find that. What were you just quoting from? From Kuhn, Your Honor. It's in the Supreme Court's decision. To the Project Act, it says, if the court of appeals, and I'm on 3742F, if the court of appeals determines that the sentence was imposed in violation of law or imposed as a result of an incorrect application of sentencing guidelines, the Court shall remand the case for further sentencing proceedings with such instructions as the Court considers appropriate. Well, I suppose maybe your argument is we'd have to say it's not an incorrect application. That's what we would say, Your Honor. And in fact, the citation of the factors, what we would submit to the Court is that while there are unfortunate labels that would lead the Court to believe that they were impermissible factors, the substance of the arguments that were made that the judge incorporated into his decision were actually permissible factors. As I understand it, you represented the defendant? Yes, I did, Your Honor. You mentioned a lot of factors, some of which are not necessarily impermissible. Yes. And then the judge said, what I'm really concerned about is this disparity. So on the basis of all of the factors, trying to make sure that he had some right factors in there, he kind of got caught with some wrong factors. That may be true, but also in our briefing of these particular factors, it is unfortunate. It's a template that we use, and it's outdated. And unfortunately, it — As far as what he said was really bothering him, it was an appropriate factor. But what I believe that he based his decision on was not only what we had argued, but also the allocution of the defendant with regards to the post-defense rehabilitation. There were other elements that took place at the sentencing hearing that he was considering at the time. If I may conclude briefly, I had an analysis of each of the particular departures. I'm not sure if the Court is interested in knowing how the facts apply to — are supported in the record, which would support the departures. There were — PSI, which we've read, and we've read the transcript. So unless there's something else, I think we have those in mind. Well, the factors that we have briefed were the post-defense rehabilitation. And I know the government hasn't brought it up this morning, but the issue of extraordinariness and whether or not that's a factual inquiry that needs to be reopened. And we'd like the Court to focus in that particular departure on the fact that this was a person who was incarcerated. From the time that he was arrested until sentencing, he wasn't somebody who was eligible for release. And so this is post-defense rehabilitation within the context of incarceration, of detention, in which somebody's freedom and rights and ability to make decisions and act freely is severely curtailed. However, he had gone forward and made some real progress with himself, had undergone counseling to address his drug problem, and had studied math, realized that this was something that he could provide to the community in prison was math instruction, and did so and received an award for the quality of instruction that he provided to his fellow inmates. Another departure that was briefed, but that we haven't discussed yet this morning, is the one of refugee status. And while this is recognized in the Eighth Circuit and the Third Circuit, also the District of Nebraska and the Eastern District of New York have recognized this as a valid ground. We weren't able to find case law on that specifically in the Ninth Circuit. And if this is something that we're not sure that this is a case in which there should be some kind of precedent made just because this person's case was never adjudicated. It's still pending. When the district court did not rely on that ground as part of its sentence, is it appropriate for us, even on de novo review, to consider that ground and then include it in the remand as a factor that the court should consider? Or aren't we just better off remanding this on an open record, telling the district court, you can't consider those improper factors, but you're certainly free to consider any other proper factor in fashioning your sentence? And then let him develop a record on that? I think in looking on a case-by-case basis and with these specific facts, what we would prefer if the court is to remand is that it be an open record so that those facts may be developed. I have a question. I don't know if you've addressed it, but it says in the Protect Act, it says in this subsection 2, if the court of appeals determines that the sentence is, and then there's a one is, the departure is based on an impermissible factor, the court shall state specific reasons for its conclusion, meaning this court. And if it determines the sentence is too high, it'll remand. If it determines the sentence is too low, it'll remand. And if the sentence isn't as described, it shall affirm. Does that mean we can affirm, even though it was on an impermissible ground, if we don't think the sentence was either too high or too low? I think that that's what this court said in the Rivas case, that where you have a ground that it wasn't supported by the record, the cultural assimilation argument that was made. However, there were arguments. The court had also relied on, I believe, family ties because they're... This is Riva and you're... Yeah, it's the supplemental authority that was submitted this morning. Okay, all right. Is that the case out of Montana? Okay. I'm not, I don't know, Your Honor. I'm not sure. But what the court did is they felt that the record insufficiently... Oh, okay. That the court couldn't divine what the district court was thinking. And in this case, I believe that the court can, that the court can go ahead and find that there were sufficient facts in the record to support the departure, even if, you know, another departure wasn't properly supported or was impermissible. Thank you. Thank you. Mr. Ferg, you've used your time, but can I just ask you a question with respect to the Justice Department? Is there something particularly egregious in what happened here that led to this appeal? Or is this a part of a more general policy of appealing downward departures because of the provisions of this act? Well, it may be both. Basically, the regulations require that when we receive what we consider an adverse decision from a district court, that has to be reported up the chain of command. And it went all the way through the criminal division and the DSG's office authorizing appeal of this because it did seem to be a situation that was specifically what was considered or within the contemplation of the Protect Act as an illegal downward departure, if you will. I know that my time has run. Thank you. Thank you. In case to start, is there anything that you want to add on that point or? I was just going to respond very quickly to some of the, very quickly, if I can have just a moment. I would just direct Judge Tallman to the statement of reasons because that's where the paragraph nine. And once again, we have the totality of the circumstances. And likewise, I direct the court's attention to page five of my reply brief, where there are several cases from this court specifically saying that the only thing that can be reviewed is what is expressly stated about the sentence in the record. You can't go speculating about what the judge had in mind. Mr. Fergo, based on Ms. James's citation to the earlier pages of the transcript, doesn't that suffice to establish the fact that that was one of the factors that the district court considered or? Actually, it seems to me that the court was of two minds because it appears that having heard the argument and making his findings, he was at that point rejecting it. And then later on additional contemplation, well, he kind of went back and said, well, maybe it is a factor. So he's kind of going back and forth. So we have, in a sense, an ambiguous record and the Allen principle of the oral statement ought to apply. Okay. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is Amos versus the city of Page, Arizona. This seems to be Arizona day to some extent. Whenever you're ready, you may proceed.
judges: Schroeder, Canby, Tallman